## Case No. 15,068.

### UNITED STATES v. FAIRCLOUGH.

[4 Wash. C. C. 398.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1823.

CUSTOMS DUTIES—MANIFEST—SURPLUS OF CARGO —MISTAKE OR ACCIDENT.

1. Under the fifty-seventh section of the collection law, a surplus of cargo, equally with a deficiency of cargo, is a disagreement with the manifest, within the true construction of that section. But this proviso is co-extensive with the enacting clause, excusing from the penalty in all cases where satisfactory proof is made, as required by this proviso.

2. In an action for the penalty given by the fifty-seventh section of the collection law for a disagreement between the cargo and the manifest, the defendant, to obtain the benefit of the proviso, must not only satisfy the court that no part of the cargo had been landed, or unladen after it was taken on board, as specified in the report, and pursuant to permits duly obtained; but also that the disagreement was by mistake or accident.

[Cited in U. S. v. Hutchinson, Case No. 15,-431.]

[Error to the district court of the United States for the Eastern district of Pennsylvania.]

This was an action of debt brought in the district court against the defendant [Robert Fairclough], master of the Placidia, a for-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

eign vessel, to recover the penalty of $500, under the fifty-seventh section of the duty law (1 Story's Laws, 624 [1 Stat. 671]), for an alleged disagreement between the cargo on board and that reported in the manifest; there being found concealed on board twenty kegs of white lead more than were mentioned in the manifest.

The jury found a verdict stating that, upon the arrival of the vessel at this port, there were on board forty kegs of white lead, whereas only twenty kegs were reported in the manifest. That the twenty, so reported, were landed under permits, and the twenty not reported remained on board, and were discovered by the custom house officers, after the rest of the cargo was landed, were seized by them, and condemned as forfeited by the district court; and that no part of the cargo of said vessel was unshipped, landed, or unladen, after they were taken on board, except as was specified in the report, or manifest, and pursuant to permits regularly obtained. Upon this verdict the district court gave judgment for the defendant. [Case unreported.]

C. J. Ingersoll, U. S. Dist. Atty.

John Sergeant and Mr. Chauncey, for defendant.

WASHINGTON, Circuit Justice. This case turns upon the true construction of the fifty-seventh section of what is called the duty law, passed on the 2d March 1799, which enacts, "that if any package whatever, which shall have been reported as aforesaid, shall be wanting, and not found on board such ship or vessel, or if the goods, wares, and merchandize on board such ship or vessel shall otherwise not agree with the report or manifest delivered by the master, or other person having the charge or command of any such ship or vessel; in every such case, the master, or other person having such charge or command, shall perfect and pay the sum of $500." The proviso declares, that the penalty shall not be inflicted, if it shall be made to appear to the satisfaction of the collector, &c.; or, in case of trial for the penalty, to the satisfaction of the court, that no part whatever of the goods, &c. has been unshipped, landed, or unladen, since it was taken on board, except as shall have been specified in the said report or manifest, and pursuant to permits as aforesaid, or that the said disagreement is by accident or mistake.

It is contended by the defendant's counsel, that the case of goods found on board, which are not entered in the report, or manifest, is not one which is embraced by the enacting clause of the above section, the disagreement spoken of in that clause not applying to surplus cargo, but to a variance between the cargo and the manifest, in description merely. But I am clearly of a different opinion. There can be very little doubt but that the legislature considered this to be a case of disagreement, because they speak of a deficiency of cargo as such; for, after providing in respect to packages reported, and not found on board, the expressions are, "or if the goods, &c. on board such ship or vessel shall otherwise not agree with the report," &c. clearly showing that the case of deficiency in the cargo reported, was considered to be one of disagreement. Now, if this be so, it would require a very subtle casuist to maintain, that, if goods are found on board, which are not reported, there is no disagreement between the cargo on board, and that reported. But the latter part of the proviso removes all doubt upon this point, by requiring in all cases as aforesaid, a post entry to be made of goods omitted to be included and reported in the manifest, and forbidding the goods so omitted to be entered, to be unladen till such post entry is made; which part of the proviso is strictly applicable to that species of disagreement which is produced by the appearance on board of goods not mentioned in the manifest, although it also includes packages, &c. which disagree with the manifest in description merely.

But, although I consider every species of disagreement as being embraced by the enacting clause, I have no hesitation in deciding that the proviso is as broad as the enacting clause, and excuses from the penalty, in all the cases, where satisfactory proof is given, such as the proviso requires. But here the difficulty arises: What are the facts of which the master is required to satisfy the collector or the court? It is insisted for the United States that they are, not only, that no part of the goods has been unshipped, landed, or unladen, since they were taken on board, except as shall have been specified in the report, or manifest, and pursuant to permits, but also that the disagreement is by mistake or accident. On the other side it is contended, that, if satisfaction is given as to either of those matters, it is sufficient, the disjunctive "or" necessarily requiring this construction.

There are, I confess, strong reasons for believing that the former construction will best fulfil the intention of the legislature, to be discovered by what is expressed in another section of this act, as well as from the reason and policy of the provision itself. For it may fairly be asked, how does the proof that no part of the goods had been unladen, except as specified in the manifest, and according to permits, account for the circumstance of there being found on board goods not entered in the manifest? This might afford some satisfaction, if the disagreement arose from goods being reported which are not found on board; as a suspicion, in that case, might naturally be entertained that the goods, not found, had been illicitly unladen. In the other case, the reasonable way of accounting for the

disagreement, would be by showing, that it was occasioned by accident or mistake. Nor is it unreasonable, in the case of a deficiency of cargo, to require of the party to account for it, not only by showing that the missing packages, &c. have not been unladen, but that it has arisen from mistake or accident, such as the decay of perishable articles, robbery, theft, destruction by rats, or in some other way.

But what presses still more strongly on my mind is the twenty-fourth section of this act, which is in pari materia with the fifty-seventh, and embraces expressly, though not exclusively, the case of goods found on board which are not entered in the manifest. That section extends also to disagreement between the cargo and the manifest, and consequently · extends (if the former part of this opinion in relation to the fifty-seventh section be correct), to a deficiency in the cargo, as well as to a disagreement in description. The penalty imposed upon the master by this section, is the forfeiture of a sum equal to the value of the goods not included in the manifest, provided, that if he make it appear to the satisfaction of the collector, &c. or of the court, that no part of the goods has been unshipped after it was taken on board, except such as shall have been particularly specified, and accounted for in the report of the master, and that the manifests had been lost, or mislaid, without fraud, or collusion, or that the same were defaced by accident, or incorrect by mistake, the forfeiture shall not incur.

But this section is confined to the commanders of vessels belonging to citizens, or inhabitants of the United States. If the fifty-seventh section, which is general in its terms, also includes this description of persons, the incongruity between the two, if the latter be interpreted literally, would be striking. For not only would the master be subjected to a double forfeiture, but, in order to relieve himself against the first, he must satisfy the collector of both facts, which would be, in effect, to convert, as to him, the disjunctive in the fifty-seventh section, into the copulative, used in the twenty-fourth. I am inclined, however, to the opinion, that the former of these sections applies exclusively to the masters of foreign vessels. Still it must seem extraordinary that the guard against fraud, provided by the twenty-fourth section, in requiring the master to account satisfactorily for the disagreement between the goods manifested, and those found on board, should have been intentionally relinquished in the case of masters of foreign vessels.

It was contended by the defendant's counsel, that the case of surplus goods was not a disagreement which was intended to be included in the enacting clause of the fifty-seventh section, because, as those goods are liable to be seized and forfeited under the sixty-eighth section it was deemed unnecessary to subject the master to this pecuniary penalty. But it would seem that congress thought otherwise, when, in a case precisely the same, except as to the national character of the vessel, the penalty, as against the master, is distinctly provided for; and yet the goods are equally liable to forfeiture under the sixty-eighth section, as they are in this case.

The only remaining inquiry is, whether, as this section, the fifty-seventh, is penal, the court can give it a construction against its letter? I understand it to be an exemption from the rule that the penal statutes are to be construed strictly, that a departure from the natural signification of the words used, is proper, wherever an adherence to it would involve an inconsistency or contradiction by reason of some other clause in the same, or another statute, indicating that the intent of the legislature was not that which the literal import of the words would lead to, and this is applicable as well to penal, as to other acts. In the case of U. S. v. Fisher, 2 Cranch [6 U. S.] 318, it was laid down that, if, from a view of the whole law, or of other laws in pari materia, the evident intention of the legislature is different from the literal import of the words employed to express it in; that intention shall prevail, because that, in fact, is the will of the legislature. This I take to be a general and well established rule of construction, applicable as well to penal as to other laws.

I am, upon the whole, of opinion, that the defendant cannot claim the benefit of the proviso, as he has failed to satisfy the court that the disagreement between the goods on board, and the report or manifest, was by mistake or accident. The judgment must be reversed.